**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **RICARDO HARRIS,** *et al.***,** on behalf of themselves and all others similarly situated, | Case No. 5:18-CV-365-TES |
| Plaintiffs, | <u>**CLASS ACTION**</u> |
| v. | |
| **GEORGIA DEPARTMENT OF CORRECTIONS,** *et al.***,** | |
| Defendants. | |

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERTS [DKT. 181]**</u>

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................1

LEGAL STANDARD...........................................................................................................2

   I.      Reliability...................................................................................................3

   II.     Helpfulness. ...............................................................................................4

ARGUMENT .......................................................................................................................5

   I.      Dr. Homer Venters' Opinions Are Admissible..........................................5

      A.     Dr. Venters Is Qualified. ....................................................................5

      B.     Dr. Venters' Opinions Are Reliable and Have an Adequate Factual Basis..................6

      C.     Dr. Venters' Opinions Are Helpful.....................................................12

   II.     Mr. Julian Martinez's Opinions Are Admissible.......................................15

      A.     Mr. Martinez Is Qualified. .................................................................16

      B.     Mr. Martinez's Opinions Are Reliable and a Have an Adequate Factual Basis........16

      C.     Mr. Martinez's Opinions Are Helpful. ...............................................20

   III.    Mr. Mark Larson's Opinions Are Admissible. ..........................................24

      A.     Mr. Larson Is Qualified......................................................................25

      B.     Mr. Larson's Opinions Are Reliable and Have an Adequate Factual Basis.............25

      C.     Mr. Larson's Opinions Are Helpful. ..................................................27

   IV.    Mr. Roger Williams' Opinions Are Admissible. .......................................28

      A.     Mr. Williams is Qualified. .................................................................29

      B.     Mr. Williams' Opinions Are Reliable and Have an Adequate Factual Basis...........30

      C.     Mr. Williams' Opinions Are Helpful..................................................32

      D.     Mr. Williams' ███████████████ Is Reliable.................................34

   V.     Mr. Richard Ray's Opinions Are Admissible............................................37

      A.     Mr. Ray Is Qualified. .........................................................................37

      B.     Mr. Ray's Opinions Are Reliable and Have an Adequate Factual Basis.................38

      C.     Mr. Ray's Opinions Are Helpful. .......................................................47

CONCLUSION....................................................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Ciba Specialty Chems. Corp.*,
  2010 WL 779273 (S.D. Ala. Mar. 2, 2010) ...........................................................................2

*In re Actos (Pioglitazone) Prods. Liab. Litig.*,
  2014 WL 120973 (W.D. La. Jan 10, 2014) ............................................................................2

*Allison v. McGhan Med. Corp.*,
  184 F.3d 1300 (11th Cir. 1999) ............................................................................................4

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ...............................................................................................22

*Belcher v. Lopinto*,
  2020 WL 5887974 (E.D. La. Oct. 5, 2020) ...........................................................................6

*Belton v. Georgia*,
  2013 WL 593805 (N.D. Ga. Feb. 15, 2013) ...................................................................30, 35

*Boca Raton Community Hospital, Inc. v. Tenet Health Care Corp.*,
  582 F.3d 1227 (11th Cir. 2009) .................................................................................13, 15, 48

*Bowers v. Norfolk S. Corp.*,
  537 F. Supp. 2d 1343 (M.D. Ga. 2007) ..............................................................................42

*Braggs v. Dunn*,
  317 F.R.D. 634 (M.D. Ala. 2016) ................................................................................. *passim*

*Bullock v. Volkswagen Grp. of Am., Inc.*,
  107 F. Supp. 3d 1305 (M.D. Ga. 2015) ...............................................................................38

*Carrizosa v. Chiquita Brands Int'l Inc.*,
  47 F.4th 1278 (11th Cir. 2022) ............................................................................................3

*City of Tuscaloosa v. Harcros Chems., Inc.*,
  158 F.3d 548 (11th Cir. 1998) .....................................................................................2, 4, 12

*Clarke v. Schofield*
  632 F. Supp. 2d 1350, 1358-59 (M.D. Ga. 2009) ................................................................42

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  2009 WL 856306 (N.D. Ga. Feb. 9, 2009) ...........................................................................27

*Cook v. Sheriff of Monroe Cnty., Fla.*,
402 F.3d 1092 (11th Cir. 2005) ...................................................................26, 27

*Cordoves v. Miami-Dade Cnty.*,
104 F. Supp. 3d 1350 (S.D. Fla. 2015) ...........................................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................................................................... *passim*

*In re Delta/Airtran Baggage Fee Antitrust Litig.*,
245 F. Supp. 3d 1343 (N.D. Ga. 2017) ...........................................................4

*Dukes v. Georgia*,
428 F. Supp. 2d 1298 (N.D. Ga. 2006) ...........................................................8

*Engel v. Liberty Ins. Corp.*,
2021 WL 1383234 (S.D. Ala. Apr. 12, 2021)...................................................2

*Fair Fight Action, Inc. v. Raffensperger*,
2020 WL 13561791 (N.D. Ga. Dec. 4, 2020)...................................................7

*Fish v. Kobach*,
309 F. Supp. 3d 1048 (D. Kan. 2018)..............................................................7

*Gamache v. Hogue*,
No. 1:19-cv-21 (LAG), 2023 WL 2658033 (M.D. Ga. Mar. 27, 2023)..............6, 7

*Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc.*,
2023 WL 2610156 (M.D. Fla. Mar. 23, 2023) ...............................................15

*Griffin v. Coffee Cnty.*,
623 F. Supp. 3d 1365 (S.D. Ga. 2022).....................................................22, 32, 42

*Haberle v. Troxell*,
885 F.3d 170 (3d Cir. 2018)...................................................................18, 47

*Heyer v. United States Bureau of Prisons*,
849 F.3d 202 (4th Cir. 2017) ......................................................................14

*Hightower v. Goldberg*,
2018 WL 296955 (M.D. Ga. Jan. 4, 2018) .....................................................3

*Jama v. Esmor Corr. Servs., Inc.*,
2007 WL 1847385 (D.N.J. June 25, 2007) .....................................................9

*Luke v. Texas*,
46 F.4th 301 (5th Cir. 2022) ...................................................................44, 47

iii

*McCorvey v. Baxter Healthcare Corp.*,
298 F.3d 1253 (11th Cir. 2002) ........................................................................3

*Mullen v. S. Denver Rehab., LLC*,
2020 WL 6680358 (D. Colo. Nov. 12, 2020) ..................................30, 34, 35, 36, 37

*Noe v. Metro. Gen. Ins. Co.*,
2012 WL 7760143 (N.D. Ga. Dec. 10, 2012) .......................................................23

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*,
326 F.3d 1333 (11th Cir. 2003) ..............................................................2, 3, 36

*Romero-Lorenzo v. Koehn*,
No. 20-cv-00901 (D. Ariz. March 30, 2023) .........................................................6

*Ruiz v. Johnson*,
37 F. Supp. 2d 855 (S.D. Tex. 1999), *rev'd and remanded sub nom. Ruiz v.*
*United States*, 243 F.3d 941 (5th Cir. 2001) ......................................................13

*San Francisco Residence Club, Inc. v. Leader, Bulso & Nolan, PLC*,
2019 WL 7038252 (N.D. Ala. Dec. 20, 2019) .....................................................13

*Scott v. Clarke*,
No. 12-cv-00036 (W.D. Va. Dec. 22, 2020) .........................................................6

*Sec. & Exch. Comm'n v. Avent*,
2018 WL 8996270 (N.D. Ga. Mar. 15, 2018) ........................................................2

*Simmons v. Ford Motor Co.*,
576 F. Supp. 3d 1136 (S.D. Fla. 2021) ...............................................................4

*StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.*,
2015 WL 3824170 (M.D. Fla. June 19, 2015) .......................................................3

*Tilman v. C.R. Bard, Inc.*,
96 F. Supp. 3d 1307 (M.D. Fla. 2015) ................................................................4

*United States v. 0.161 Acres of Land*,
837 F.2d 1036 (11th Cir. 1988) ......................................................................3, 8

*United States v. Frazier*,
387 F.3d 1244 (11th Cir. 2004) ...............................................................7, 35, 36

*United States v. Mississippi*,
400 F. Supp. 3d 546 (S.D. Miss. 2019) ...............................................................7

*United States ex rel. Wall v. Vista Hospice Care, Inc.*,
2016 WL 3449833 (N.D. Tex. June 20, 2016) ...................................................9, 10

*Whatley v. Merit Distrib. Servs.*,
    166 F. Supp. 2d 1350 (S.D. Ala. 2001).........................................................................2

*Williams v. First Advantage LNS Screening Sols. Inc.*,
    2015 WL 9690018 (N.D. Fla. Mar. 31, 2015) .........................................................23

*Williamson Oil Co. v. Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003) .....................................................................13, 15

*Woodward v. Lopinto*,
    2021 WL 1961662 (E.D. La. May 17, 2021)............................................................6

## Statutes & Other Authorities

Americans with Disabilities Act (ADA).............................................................. *passim*

Section 504 of the Rehabilitation Act .................................................................. *passim*

Eighth Amendment to the United States Constitution ..................................9, 12, 13, 14

## INTRODUCTION

Plaintiffs' experts have decades of experience in their fields. They have applied that experience to identify deficiencies in equal access, effective communication, and accommodations of people with hearing disabilities in the Georgia Department of Corrections ("GDC") and under the supervision of the Georgia State Board of Pardons and Paroles ("GBOP"). Their opinions are supported by careful review of the voluminous sources of information, including ███████ ███████████████████████████████████████████████████████████████ ███████████████████████████████. Their reports pull back the curtain on a prison and parole system riddled with problems that repeatedly and predictably fails to accommodate and ensure effective communication and equal access for deaf and hard of hearing people. Plaintiffs' experts' opinions are all admissible under Federal Rule of Evidence 702. They all support Plaintiffs' theory of the case—that these failures in GDC's and GBOP's processes for providing effective communication, reasonable modifications, and equal access for deaf and hard of hearing people violate the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and the United States Constitution. Plaintiffs' experts will help the Court determine Defendants' liability and craft appropriate remedies.

Faced with experts highly experienced in correctional healthcare, accommodation of disabilities in prison systems, mental health care for deaf people in custodial settings, fire safety, and auxiliary aids and services, Defendants attempt to exclude the experts' opinions by distorting their opinions, methodologies, and applicable law. *See* Dkt. 181 ("Mot."). As discussed below, none of these reasons are persuasive. Defendants do not give any persuasive reason to exclude any portion of Plaintiffs' experts' testimony, and the Court should deny Defendants' Motion.

## LEGAL STANDARD

Expert testimony should be admitted where the expert is qualified, employs a "sufficiently reliable" methodology, and offers testimony that "assists the trier of fact" to either "understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). Although the trial court performs a gatekeeping role in conducting a *Daubert* inquiry, that role "is not intended to supplant the adversary system." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Rather, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. Experts may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Defendants do not challenge the qualifications of any of Plaintiffs' experts.

Challenges to an expert's opinion must be specific and clear. *See Whatley v. Merit Distrib. Servs.*, 166 F. Supp. 2d 1350, 1354-55 (S.D. Ala. 2001) (denying motion to exclude where defendants took a "shotgun approach to Plaintiffs' evidence . . . without taking proper aim, as needed in such motions.") (quotations omitted); *Abrams v. Ciba Specialty Chems. Corp.*, 2010 WL 779273, at *8 (S.D. Ala. Mar. 2, 2010) (denying motion to strike expert's affidavit where "[t]he sole basis" for exclusion was a "conclusory one-sentence assertion" that the expert's opinions were not relevant or reliable, noting that "[s]uch an opaque objection cannot be sustained."); *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2014 WL 120973, at *15 (W.D. La. Jan 10, 2014) (denying exclusion of experts based on "cursory arguments"). Failure to raise arguments or to challenge portions of an expert's opinions in a *Daubert* brief precludes consideration of these challenges. *Sec. & Exch. Comm'n v. Avent*, 2018 WL 8996270, at *3 (N.D. Ga. Mar. 15, 2018) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682-83 (11th Cir. 2014)); *Engel v. Liberty Ins. Corp.*, 2021 WL 1383234, at *2 (S.D. Ala. Apr. 12, 2021).

2

## I.     Reliability.

With respect to the reliability of social science experts, "research, theories[,] and opinions cannot have the exactness of hard science methodologies, and peer review, publication, error rate, etc. are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert." *Carrizosa v. Chiquita Brands Int'l Inc.*, 47 F.4th 1278, 1318 (11th Cir. 2022) (quotation omitted). "Other indicia of reliability" of social science expert opinions include "professional experience, education, training, and observations." *Id.* (quotation omitted). At the *Daubert* phase, the court must assess whether an expert's proffered methodology is sound, *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002), but does not assess whether the expert's opinions are persuasive or whether the expert has employed the optimal methodology to reach them, *Quiet Tech.*, 326 F.3d at 1344-46.

Arguments that experts should have reached other opinions or adopted different methodologies go to weight, not admissibility. *Id.* at 1345 (challenges that expert "failed to include" certain parameters when applying an otherwise reliable methodology "go to weight, not the admissibility, of the evidence he offered"); *Hightower v. Goldberg*, 2018 WL 296955, at *2 (M.D. Ga. Jan. 4, 2018) ("Defendants' objections go to the weight and credibility of [the expert's] opinions, not their reliability. If [the expert] failed to consider certain facts in forming his opinions, Defendants will be able to vigorously cross examine him, present their own expert testimony, and tell the jury why they believe his opinion should not be believed."); *StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.*, 2015 WL 3824170, at *5-6 (M.D. Fla. June 19, 2015) (arguments that "[the expert] should have used a different methodology in deriving his opinions" go to weight).

Arguments that experts should have considered—or not considered—certain facts go to weight, not admissibility. "[W]here the expert's testimony has a reasonable factual basis, a court should not exclude it." *United States v. 0.161 Acres of Land,* 837 F.2d 1036, 1040 (11th Cir. 1988).

"[T]he facts relied upon by an expert must find some support . . . in the record and must be supported by more than subjective belief and unsupported speculation, but mere weaknesses in the factual basis of an expert witness opinion bear on the weight of the evidence rather than on its admissibility." *In re Delta/Airtran Baggage Fee Antitrust Litig.*, 245 F. Supp. 3d 1343, 1361 (N.D. Ga. 2017) (quotations omitted).

## II.    Helpfulness.

Opinions are helpful if they will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). In determining helpfulness, which "goes primarily to relevance," a court must "ensure that the proposed expert testimony is relevant to the task at hand, . . . i.e., that it logically advances a material aspect of the proposing party's case." *Id.*; *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (citation omitted).

An expert need not opine on each element of a party's legal theory to be helpful. Rather, to be "helpful," testimony must "merely constitute one piece of the puzzle that the plaintiffs endeavor to assemble." *Tuscaloosa,* 158 F.3d at 565; *see also Daubert*, 509 U.S. at 591; *Simmons v. Ford Motor Co.*, 576 F. Supp. 3d 1136, 1143 (S.D. Fla. 2021) (rejecting argument that expert testimony was unhelpful where expert was "unable to establish" one element because "the argument ignores the fact that to be admissible" the testimony "need not prove the plaintiffs' case by itself") (alteration adopted, quotation omitted); *Tilman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1322 (M.D. Fla. 2015) ("[T]he expert need not have an opinion on the ultimate question to be resolved by the trier of fact in order to satisfy this requirement.") (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)). An expert should not and need not offer legal conclusions to be helpful. *Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1364-65 (S.D. Fla. 2015)

(citing *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997)

("Each courtroom comes equipped with a 'legal expert,' called a judge.") (citation omitted)).

## ARGUMENT

I.      **Dr. Homer Venters' Opinions Are Admissible.**

After a review of extensive record evidence and based on his experience, Dr. Homer

Venters opined that ████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████      ████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████.[1] *See, e.g.*, Venters 75-78; Venters

Rebuttal 1. Because Dr. Venters is qualified to reach these opinions, and because his opinions are

based on a reliable methodology and are helpful to the Court, they should not be excluded.

A.      **Dr. Venters Is Qualified.**

Defendants do not challenge Dr. Venters' qualification as an expert. He has extensive

experience as a physician, an internist, and an epidemiologist providing and overseeing health

services in jails and prisons. He served as Chief Medical Officer for the New York City Department

of Correctional Health Services, overseeing all aspects of health services in New York City's jails,

Venters 1-3, and he serves as a court-appointed monitor of jails and prison systems in Virginia,

California, Hawai'i, Connecticut, and the U.S. Virgin Islands, *see* Venters Rebuttal, Ex. A. Courts

have repeatedly rejected challenges to Dr. Venters' testimony and found him "patently qualified"

to testify on the provision of healthcare services in jails and prisons. *Belcher v. Lopinto*, 2020 WL

---

[1] *See* March 9, 2023 Expert Report of Dr. Homer Venters ("Venters," attached as Exhibit 1); August 7, 2023 Rebuttal Report of Dr. Homer Venters ("Venters Rebuttal," attached as Exhibit 2).

5887974, at *3 (E.D. La. Oct. 5, 2020).[2]

**B.**    **Dr. Venters' Opinions Are Reliable and Have an Adequate Factual Basis.**

**1.**    **Dr. Venters Used a Widely Accepted, Reliable Methodology.**

Dr. Venters' approach is reliable. He ████████████████████████████████

████████ and used the same methodology that he uses in the regular course of his profession

and as an expert, a methodology that has been accepted by numerous courts.

Dr. Venters ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Venters 3-7.

Dr. Venters has employed this methodology throughout his career as a medical professional

and as an expert, which supports reliability. *See Gamache v. Hogue*, No. 1:19-cv-21 (LAG), 2023

WL 2658033, at *1 (M.D. Ga. Mar. 27, 2023) (court "must ensure that an expert . . . employs in

the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

---

[2] *See also* Dkt. 800, *Scott v. Clarke*, No. 12-cv-00036 (W.D. Va. Dec. 22, 2020); Dkt. 231, *Romero-Lorenzo v. Koehn*, No. 20-cv-00901, at 2 (D. Ariz. Mar. 30, 2023); *Woodward v. Lopinto*, 2021 WL 1961662, at *3 (E.D. La. May 17, 2021).

relevant field.") (quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)); *id.* at *5 (quoting Fed. R. Evid. 702 advisory committee note that an expert should "be[] as careful as he would be in his regular professional work outside his paid litigation consulting.").

This ██████████████████████ methodology has also been routinely accepted by courts, including in at least one other case over the objections of the same counsel representing Defendants here. *See Braggs v. Dunn*, 317 F.R.D. 634, 646 (M.D. Ala. 2016) (finding a "multifaceted" approach considering "not only the records and statements of individuals but also other sources such as deposition transcripts and other documents" is particularly appropriate when investigating systemic issues in jail and prison systems); *see also Fish v. Kobach*, 309 F. Supp. 3d 1048, 1084 (D. Kan. 2018) (finding reliable a "'mixed methods' research approach, in which different data sources are triangulated in order to identify patterns across the sources"); *United States v. Mississippi*, 400 F. Supp. 3d 546, 569 n.33 (S.D. Miss. 2019) (rejecting challenge where expert used "mixed-method[s]" supported by multiple sources); *Fair Fight Action, Inc. v. Raffensperger*, 2020 WL 13561791, at *5-6 (N.D. Ga. Dec. 4, 2020) (finding public policy expert's "mixed methods approach" "sound[,]" and defendants' argument that the expert failed to "pursue certain sources" was "better addressed through cross-examination."). Here too, ████████

████████████████████████████████████████████████████████████████

██████████████

**2.    Dr. Venters Based His Opinions on an Adequate Factual Basis.**

Defendants simply ignore Dr. Venters' methodology. Instead, they purport to challenge the factual bases of Dr. Venters' opinions by criticizing his consideration of isolated sources of information. *See* Mot. 22-27. Defendants ignore that Dr. Venters also ████████████████

████████████████████████████████████████████████████████████

████████████████████. *See* Venters 72. Because ████████████████████

██████████████████████████████████████████, their arguments go, at best, to the weight of Dr. Venters' opinions, not their admissibility, as do arguments that he omitted certain variables or drew the wrong conclusions from the facts.[3] *See supra* p. 2-4.

The sole case ████████████████████████████, *Dukes v. Georgia*, 428 F. Supp. 2d 1298 (N.D. Ga. 2006), is not to the contrary. In *Dukes*, the court excluded the testimony of a microbiologist (not a "correctional healthcare expert," as Defendants contend) who premised his opinions on assumptions about conditions in a laboratory, but possessed no information about the actual conditions in the laboratory at the time of the incident at issue. *Id*. at 1317; *see also Braggs v. Dunn*, 317 F.R.D. at 647-48 ("[T]he expert at issue in [*Dukes*] does not appear to have sampled anything; he simply speculated, without much basis, about whether a lab technician should have identified a strain of yeast."). *Dukes* confirms that expert testimony cannot be premised on mere guesswork or speculation, *see 0.161 Acres of Land*, 837 F.2d at 1040, but it is inapplicable to Dr. Venters, ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████.

Defendants' specific complaints about ████████████████████████████████ ████████████ do not support exclusion, but, to the extent the Court considers them, each is also unpersuasive in its own right.

**"Cherry-picking":** Defendants complain that Dr. Venters "cherry-picked" the "worst case" files and then improperly extrapolated from them. Mot. 25-26. As discussed above, Dr. Venters ████████████████████████████████████████

---

[3] Unlike ████████████████████████████, this is not a situation where exclusion is proper because the expert relied solely on unverified statements of an interested party or information that would not reasonably be relied upon by experts in the field. *See* ████████████████████████ (collecting cases).

██████████████████████. Moreover, even ████████████ ███████████

████████████████████████████████ Defendants' complaints would still be unpersuasive.

Counsel for Defendants made this exact argument, unsuccessfully, on behalf of the Alabama

Department of Corrections in *Braggs*. 317 F.R.D. at 645-47. As *Braggs* noted, numerous courts

have accepted prison experts' use of non-randomized sampling on the grounds that such methods

are "accepted and mainstream in the scientific community" and may even be "more applicable to

a proper evaluation of the delivery of healthcare at a prison." *Id*. at 646 (quotations omitted); *see*

*also Jama v. Esmor Corr. Servs., Inc*., 2007 WL 1847385, at *27-28 (D.N.J. June 25, 2007)

(rejecting challenge to expert's reliability where expert based his conclusions on a statistical

analysis of a non-random sample of medical request forms, deposition transcripts, government

reports, and correctional healthcare accreditation standards). Further, as *Braggs* explained, courts

have "recognized that this sort of sampling is particularly reasonable when it is part of a

multifaceted review that considers not only the records and statements of individuals but also other

sources such as deposition transcripts and other documents that allows an expert to 'draw general

conclusions.'" 317 F.R.D. at 646 (citation omitted). Arguments about Dr. Venters' use ███████

███████████████ do not undermine the reliability of his methodology. *See id*.

**Statistical analysis:** Although Defendants claim that the fact-intensive nature of ADA and

Eighth Amendment claims undermines Dr. Venters' method of reviewing a non-random sample of

class members' files, the only relevant case that Defendants cite in support of this statement is

entirely distinguishable.[4] Mot. 27 (citing *United States ex rel. Wall v. Vista Hospice Care, Inc*.,

2016 WL 3449833 (N.D. Tex. June 20, 2016)). In *Vista Hospice*, the court struck a statistical expert

---

[4] Defendants also cite cases which state that determining whether a public entity is liable under the Eighth Amendment or the ADA is "fact-intensive." Mot. 27. While that may be true, these cases have no relevance to the reliability inquiry under *Daubert*. Defendants offer no support for the idea that the level of "fact-intensiveness" inherent to the parties' legal claims has any bearing on permissible sampling methods. *Id*.

on the grounds that "statistical sampling and extrapolation" cannot be used "to establish liability in a [case] where falsity depends on individual physicians' judgment regarding individual patients." 2016 WL 3449833 at *12-15. Here, by contrast, Dr. Venters did not purport to ████

████████████████████████████████████████████████████████████████████████████

████████████████      *See Braggs*, 317 F.R.D. at 648 (distinguishing *Vista Hospice* because plaintiffs' expert "has not engaged in statistical sampling" and because "this case does not turn on assessments of the case-specific 'subjective clinical judgment' of mental health staff").

Defendants complain that Dr. Venters performed a ████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████   Mot. 22-24. But Dr. Venters did not ████████████████   He simply observed ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████. Venters 11-12. Based on his expertise, Dr. Venters drew a reasonable inference from this ████████████████████████████

████████████████████████████████████████████████████████████████████████████

████.[5] *Id.* 12-13. This inference was consistent with numerous other sources of evidence that Dr. Venters considered in reaching his opinions. *Id.* 10-15.

**Other suggested methodologies and sources of information:** Defendants also state that Dr. Venters "failed to ████████ ████████████████████████████████████████████

████████████   Mot. 23. This is false. ████████████████████████████████████████

---

[5] Defendants are also wrong that Dr. Venters' analysis is somehow inconsistent with ████████████████████
████████████████████████████. Mot. 24. ████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████   March 10, 2023 Expert Report of Julian Martinez ("Martinez," attached as Exhibit 3) 9, 23-24; March 10, 2023 Expert Report of Mr. Roger Williams ("Williams," attached as Exhibit 9) 38-40.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████. Venters Rebuttal 21-22. Defendants assert that Dr. Venters

"acknowledg[ed]" ███████████████████████████████████████████

█████████" Mot. 24 (citing Venters Rebuttal 21-22), but that is also untrue. Dr. Venters' report

contains no such acknowledgement. Venters Rebuttal 21-22.[6] More broadly, Dr. Venters repeatedly

emphasized that █████████████████████████ ███████████████████████

████████████████████████████████. Venters 18-19, 25, 53-55.

Defendants argue that Dr. Venters should have determined whether ██████████████

████████████████████ by looking at files from people who were not class members, to see if

they had hearing loss. Mot. 23. They argue that this approach would yield more accurate

information. *Id.* Arguments that Dr. Venters could or should have used different methods or

sources of evidence, are a matter of weight, not admissibility. *See supra* p. 2-4.

Defendants argue that Dr. Venters' opinions are supported by what they consider ████████

████████████████. Mot. 26. Defendants cite no case law establishing █████████████

████████████████████████ to form a reliable opinion. *Id.* They also ignore

██████████████████████████████████████████. *Id.* For

example, Defendants contend that Dr. Venters' opinion on █████████████████████████

███████████████████████████████████ *Id.* But they fail to

challenge or even acknowledge ████████████████████████████████████

███████████████████████████████████████████████████

---

[6] Indeed, the actual records available for ███████████████████████████████████
██████████████████████████████████████████████████
██████████████ Venters Rebuttal 22.

████████████████████████████████████████████. Venters 61-70. Arguments

about appropriate sample size, or whether Dr. Venters considered ███████████████, go

to weight rather than admissibility. *See supra* p. 2-4.

### C.   Dr. Venters' Opinions Are Helpful.

Dr. Venters' testimony is helpful because it will "assist the trier of fact to understand the

evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. Plaintiffs contend that failures

in GDC's processes for ensuring effective communication and providing accommodations to deaf

and hard of hearing persons violate the ADA, Section 504, and the Constitution. *See* Dkt. 182-1.

Dr. Venters' report, ████████████████████████████████████████████

████████████████████████████████████████████████████ unquestionably

"advances a material aspect" of Plaintiffs' case and will assist the Court in determining GDC's

liability and formulating appropriate remedies. *Daubert*, 509 U.S. at 591.

Defendants' arguments regarding about "helpfulness" contend that Dr. Venters applied

"incorrect legal standards." Mot. 27. In their view, to be admissible, an expert must opine as to

every element of a claim and apply terminology from case law cited by Defendants. *Id.* 27-32.

They claim, for example, that Dr. Venters' opinions must be excluded because he did not

"demonstrate that GDC violated the Eighth Amendment" or articulate ██████████████████

██████████████ *Id.* 28. Defendants misunderstand both the law and Dr. Venters' opinions.

First, Dr. Venters' report is one of many pieces of evidence that Plaintiffs will use to show

Defendants' ultimate liability at trial. It was not necessary for Dr. Venters' testimony to prove each

element of Plaintiffs' claims, and Defendants' arguments to the contrary are incorrect. As the

Eleventh Circuit has explained, an expert's "data and testimony need not prove the plaintiffs' case

by themselves; they must merely constitute one piece of the puzzle that the plaintiffs endeavor to

assemble before the jury." *Tuscaloosa*, 158 F.3d at 565; *see also supra* p. 4.

Second, Defendants' argument that Dr. Venters' testimony should be excluded "to the extent he concluded ████████████████████," Mot. 27-30, and "to the extent he concluded ████████████," *id.* 30-32, is inapposite. Dr. Venters did not "conclude" that ████████████████████████. Indeed, Dr. Venters did not opine on GDC's ultimate liability anywhere, nor would it be "helpful" for him to do so. *Braggs*, 317 F.R.D. at 650 (noting that "it is the court's task," not the expert's, "to determine whether [harms alleged to be Eighth Amendment violations] are 'serious,' based on case law."); *see also Ruiz v. Johnson*, 37 F. Supp. 2d 855, 888-89 (S.D. Tex. 1999) ("[W]hether evidence rises to a level of system-wide violation is based on the finding of a persistent pattern as determined by the logical evaluation of the trial judge."), *rev'd and remanded on other grounds sub nom. Ruiz v. United States*, 243 F.3d 941 (5th Cir. 2001); *supra* p. 4. Defendants' attacks on "strawman" opinions that Dr. Venters did not offer are irrelevant. *San Francisco Residence Club, Inc. v. Leader, Bulso & Nolan, PLC*, 2019 WL 7038252, at *10 (N.D. Ala. Dec. 20, 2019) (denying motion to exclude expert testimony that "construct[ed] a strawman" out of the testimony to "strike it down.").

Defendants' reliance on *Boca Raton Community Hospital, Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227 (11th Cir. 2009), and *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287 (11th Cir. 2003), are inapplicable here. In *Boca*, a RICO case about Medicare overcharging, an expert calculated injury and damages without distinguishing between lawful and unlawful overcharging (under the expert's party's own theory of liability). 582 F.3d at 1233-34. In *Williamson Oil*, a price fixing case, an expert incorrectly assumed that *all* evidence of parallel pricing was evidence of unlawful conduct. 346 F.3d at 1322-23. In both *Boca* and *Williamson Oil*, experts were attempting to calculate the extent of defendants' unlawful behavior, but failed in their reports to distinguish between lawful and unlawful conduct, rendering their opinions unhelpful

13

and irrelevant under the correct legal analysis. Here, by contrast, none of Plaintiffs' experts purported to opine on ███████████████████████████—rather, each opined on ████████████████████████████████████████████████. The Court is well-equipped to consider those opinions and apply them to the law. *See also infra* p. 15.

Even if the Court considers Defendants' arguments about the law, they are unpersuasive.

With respect to the Eighth Amendment, Defendants contend that Dr. Venters failed to ███████ the "standard established in *Heyer* [*v. United States Bureau of Prisons*, 849 F.3d 202 (4th Cir. 2017)]" and argue this ██████████ requires a plaintiff to "establish a 'serious medical need' other than his deafness" and to prove that he is "completely unable to communicate with" medical staff. Mot. 28-29. [7] Dr. Venters need not, and did not claim to, demonstrate that ████████████ ██████████████████ *See supra* p. 4. Defendants do not explain why an expert in the Eleventh Circuit should "apply" Fourth Circuit case law, especially when, as Defendants recognize, *this* Circuit has confirmed that a "significant and substantial hearing loss that can be remedied by a hearing aid is a serious medical need" for the purposes of the Eighth Amendment. Mot. 29 (quoting *Gilmore v. Hodges*, 738 F.3d 266, 278 (11th Cir. 2013)). Defendants make no attempt to reconcile the discrepancy.[8]

With respect to ████████████████, Defendants also argue that Dr. Venters' testimony will not assist the Court because he "applied an incorrect legal standard to the extent he concluded GDC violates the ADA." Mot. 30. Dr. Venters did not conclude that ██████████████ ███████—that is a legal conclusion for the Court. Defendants' theory ██████████████—contested by

---

[7] Defendants also briefly complain that some of the sources on which Dr. Venters relied were inadequate, without discussing Dr. Venters' other sources. Mot. 29-30. This argument is unavailing. *See supra* p. 2-4.

[8] Defendants also misstate *Heyer*'s central holdings. The Fourth Circuit merely noted that the plaintiff in that case "d[id] not contend that his deafness, in and of itself, is a serious medical need." 849 F.3d at 210. And, while the plaintiff in *Heyer* was unable to communicate with staff, the court did not require evidence of a complete inability to communicate as a threshold requirement of an Eighth Amendment claim. *Id*. at 210-11.

Plaintiffs—is not a basis to exclude Dr. Venters' opinions. *See Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc.*, 2023 WL 2610156, at *13 (M.D. Fla. Mar. 23, 2023) (rejecting *Daubert* challenge that the information provided by plaintiffs' expert could not establish liability under defendants' theory of the case because "[d]efendant's theory is just that – one party's theory of the case that is vehemently disputed by the other.").

Defendants argue why, as a legal matter, they believe ██████████████ discussed by Dr. Venters do not violate the ADA. Mot. 30-32. They worry that the factfinder will be "misle[]d" by Dr. Venters' descriptions of ████████████ where, for example, they contend that GDC failed to use a person's primary mode of communication in a medical encounter but did not violate the law. Mot. 31. Plaintiffs explain at length why Defendants' theory is mistaken in their Motion for Partial Summary Judgment. *See e.g.*, Dkt. 182-1 at 2-10, 15-16, 20-21, 33-35. In any event, the Court, who will be the factfinder applying the law in this case, will not be misled about legal standards by an expert's opinion. Dr. Venters opines on ████████████████ ██████████████████████. Even if Defendants successfully argue that certain of ████████████████ are permissible, that does not undermine the relevance or helpfulness of Dr. Venters' opinions. The Court is fully equipped to apply the relevant legal standards to determine whether these deficiencies give rise to liability. Unlike the experts in *Boca* and *Williamson*, this disputed legal theory does not go to admissibility.

## II.    Mr. Julian Martinez's Opinions Are Admissible.

Mr. Julian Martinez relied on ████████████████████████ ████████████████████████████████████ ████████  ████████  ████████████████████

██████████████████████████████.[9] Defendants seek exclusion of ███████████████

██ of Mr. Martinez's report on the grounds that they "lack a sufficient factual basis" and seek

exclusion of ███████████████████████ on the grounds that they "appl[y] an incorrect

legal standard."[10] Mot. 32-41. Mr. Martinez's opinions use a reliable methodology and are helpful.

### A.    Mr. Martinez Is Qualified.

Defendants do not challenge Mr. Martinez's qualifications. He worked for 28 years in

corrections and then began working as an ADA consultant. Martinez 1. Mr. Martinez has worked

at four divisions within the California Department of Corrections and Rehabilitations ("CDCR"),

including serving as CDCR's subject matter expert for the ADA. *Id.* In this role, Mr. Martinez

provided guidance to CDCR's executive and line staff, developed and implemented compliance

instruments and methodologies, and developed training curricula to ensure staff compliance with

the ADA and the terms of ADA settlements entered into by CDCR. *Id.* As an ADA consultant,

Mr. Martinez has provided services to state prisons, county jails, and local detention facilities, and

has served as a neutral, court-appointed monitor in several cases. *Id.* at 1-3.

### B.    Mr. Martinez's Opinions Are Reliable and Have an Adequate Factual Basis.

Defendants challenge Mr. Martinez's opinions because they believe he should have █████

█████████████████████. Mot. 37-41. These arguments are unpersuasive and do not support

exclusion. *See supra* p. 2-4*.*

---

[9] *See* Martinez, *see also* August 7, 2023 Rebuttal Expert Report of Julian Martinez ("Martinez Rebuttal," attached as Exhibit 4).

[10] Defendants do not challenge ████████████████████████████████████████

████████████████████████████████████████████████████

Martinez 165-73. ████████████████████████████████████████████

excluding Mr. Martinez's testimony in its entirety is not an appropriate remedy even if the Court credits Defendants' arguments. *See supra* p. 2.

### 1.    Mr. Martinez Used a Widely Accepted Methodology.

Mr. Martinez's opinions are reliable because they use a widely accepted methodology, and because Mr. Martinez relied upon the same methodology that he uses in other audits and evaluations in his professional work. Martinez 7-8; *see also supra* p. 6. His typical methodology

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████.[11] This approach has been accepted as reliable. *See supra* p. 6-7.

Consistent with his typical methodology, Mr. Martinez in this case ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████ Mr. Martinez's thorough application of the same methodology he has applied throughout his career strengthens his reliability. *See supra* p. 6.

### 2.    Mr. Martinez Based His Opinions on an Adequate Factual Basis.

Mr. Martinez's opinions in ████████████████ do not "lack a sufficient factual basis." Mot. 37-41. Defendants challenge specific sources of evidence in isolation, complain about non-random

---

[11] June 9, 2023 Expert Deposition of Julian Martinez, at 314:1-18 ("Martinez Dep.," excerpt attached as Exhibit 5).

sampling and sample size, while disregarding the full range of factual basis on which Mr. Martinez relied. *Id.* They also contend that Mr. Martinez should have considered different or additional types of evidence in reaching his conclusions. *Id.* None of these arguments have merit, and, at best, they go to weight, not admissibility. *See supra* p. 2-4.

**▮▮▮▮▮▮▮▮:** Mr. Martinez opined that GDC is not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Martinez 8-24. Defendants argue that Mr. Martinez's ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is incorrect, and that Mr. Martinez should have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot. 37. For the reasons previously discussed, this claim is unpersuasive. *See supra* p. 2-4. Defendants mischaracterize Mr. Martinez's opinion as based on a single type of evidence ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ignore that Mr. Martinez based his opinion on analysis ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Martinez 8-24. These arguments go, at best, to the weight, not the admissibility, of his testimony, as are the arguments that Mr. Martinez should instead have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ *See supra* p. 2-4.[12]

**▮▮▮▮▮▮▮▮** Mr. Martinez opined that GDC is failing ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Martinez 61. Defendants paint Mr. Martinez's opinion as based solely on "▮▮▮▮ cherry-picked

---

[12] Defendants' reliance on *Haberle v. Troxell*, 885 F.3d 170 (3d Cir. 2018) is misplaced. Mot. 37. Defendants argue that the Third Circuit held that "a public entity does not violate the ADA 'unless and until' it denies a reasonable accommodation," but omit the fact that the Third Circuit limited its holding to "[a] municipality's failure to train its police" and also identified "improper discrimination" as a separate basis for liability. *Haberle*, 885 F.3d at 179 n.7. Plaintiffs discuss at length in their Motion for Partial Summary Judgment why GDC's approach of only providing accommodations "on request" is incorrect. *See* Dkt. 182-1, *see also supra* p. 14-15.

███████████████████████████████████████████████████ Mot. 38.

This misstates the depth of Mr. Martinez's analysis, which included, *inter alia*, █████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████ Martinez 69-77. It was only after

considering these and other sources of information that Mr. Martinez concluded that ████████

█████████████████████████████████████ *Id.* 77. Defendants' characterization

of this extensive analysis as mere "extrapolation" from "████████████████████████████

███████████████████████" is not accurate or credible. Mot. 38. Arguments that

Mr. Martinez should have considered different, or more, evidence, does not support exclusion. *See*

*supra* p. 2-4.

   **Other challenges:** Defendants' remaining challenges to the factual basis of Mr. Martinez's

opinions are equally unpersuasive. With respect to Mr. Martinez's opinions that ████████████

██████████████████████████████████████████████████████████████

████████████ Defendants contend that these are the result of improper "cherry-picking" of "worst

case" examples. Mot. 38-39. This is incorrect, as discussed previously. *Supra* p. 9. They contend

that he relied "solely" █████████████████████████. *Id.* He did not, as a cursory review of

the challenged sections of his report show, *see* Martinez 104-151. They contend that he

"extrapolated" from too small a sample size. Mot. 38-39. He did not, and, in any event, he did not

█████████████████████████████████████. They contend that the "fact-intensive"

nature of ADA claims somehow undermines his opinions. *Id.* It does not. *See supra* p. 9-10.

Defendants challenge Mr. Martinez's opinions that GDC fails to provide equal access to ████████████████████ for deaf and hard of hearing people because, they argue, he should have considered ████████████████████████ (in contrast to their concern with respect to ███████████████████, they argue, he relied *too much* on ██████████████████). Mot. 40. Defendants are wrong that Mr. Martinez failed ████████████████████████████████ ██████████████████████████████████████████, Martinez 159-60, 163-65, and, in any event, their challenges do not go to admissibility. *See supra* p. 2-4.

Mr. Martinez's opinion that GBOP ████████████████████████████ is based on ████████████████████████████. Martinez 209-219. Defendants again argue that Mr. Martinez should have considered different types of evidence in reaching this opinion. Mot. 40. Again, arguments that Mr. Martinez should have considered more or different documents go to weight, not admissibility. *See supra* p. 2-4.

### C.   Mr. Martinez's Opinions Are Helpful.

Mr. Martinez's testimony is helpful. Plaintiffs contend that failures by GDC and GBOP to ensure effective communication and provide equal access to deaf and hard of hearing persons violate the law. Mr. Martinez's opinions ██████████████████████████████ ████████████████████████████████████████ which will be relevant to determining liability and formulating remedies.

Defendants seek exclusion of ████████████████████████ on the grounds that they "appl[y] an incorrect legal standard." Mot. 32-37. These arguments misunderstand the helpfulness prong of the *Daubert* inquiry. An expert need not opine on all elements of a claim or the ultimate issue. *See supra* p. 4. Mr. Martinez's opinions are not legal conclusions. Rather, they are conclusions about ████████████████████████████ which constitute a piece

of the puzzle that Plaintiffs will present in support of their case.[13] *See supra* p. 2-4.

███████████████████████████: In ██████ Mr. Martinez opined that ███████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ Martinez 43. Defendants contend that

Mr. Martinez relied on an "inadequate ██████████ sample" and argue that ███████████

███████████████████████████████████████████████████████████████████████

████████████ Mot. 33. Despite appearing in the section of Defendants' brief challenging

"incorrect legal standards," this is a variation of the same "insufficient factual basis" argument that

Defendants make repeatedly, and unpersuasively. *See supra* p. 2-4. Defendants take issue with a

subset of Mr. Martinez's sources but ignore his overarching methodology and the full range of

evidence he relied upon, which also included ████████████████████████████████

███████████████████████████████████████████████████████████████████████

Martinez 24-43. Defendants' arguments therefore go to weight, not admissibility.[14]

████████████: Mr. Martinez opined that GDC lacks ████████████████████████████

███████████████████████████████████. *Id.* 60. Defendants' argument

that such a system is not expressly required by the ADA misses the point. Mot. 34. Mr. Martinez

did not opine about whether the ADA mandates ████████████████████. He opined that ████

███████████████████ ████████████████████████████ ████████

---

[13] Defendants' recitation of the legal framework is incomplete. For example, it ignores the obligation of public entities to ensure that their communications with people with disabilities are "as effective as" their communication with others and that liability for denial of effective communication does not require a showing of downstream harm. Dkt. 182-1 at 4. But none of that is relevant for *Daubert* purposes.
[14] Defendants also misunderstand what it means to identify an individual's preferred method of communication.
█████████████████████████████████████████████████ Mot. 33. As a matter of logic, eliminating one possible method of communication among many does not answer the question of what form of communication the individual actually prefers. *See also infra* p. 28-32. This misunderstanding illustrates why Plaintiffs' expert testimony is necessary to explain such technical concepts outside the understanding of a lay person. Fed. R. Evid. 702.

communication with deaf and hard of hearing people if they know who those people are and what they need. Martinez 60-61. He opined that evidence shows that GDC staff do *not* know who in their custody is deaf or hard of hearing. *Id.* 51-59. Defendants may present evidence at trial attempting to show that they can comply with the ADA without a real-time tracking system. *But see Armstrong v. Davis*, 275 F.3d 849, 876 (9th Cir. 2001) ("Because the regulations implementing the ADA require a public entity to accommodate individuals it has identified as disabled, 28 C.F.R. § 35.104, some form of tracking system is necessary in order to enable the Board to comply with the [ADA]."). But Mr. Martinez's opinion, based on his experience with numerous other prison systems that have ███████████████████████████████████████████████████ ████████████████████████████████ is nonetheless helpful.

Mr. Martinez's ████████████████████████████ does not render his opinion unhelpful. Mot. 34. Defendants incorrectly state that the court in *Griffin v. Coffee Cnty.*, 623 F. Supp. 3d 1365, 1381 (S.D. Ga. 2022), concluded that an expert's use of the word "may" renders his opinion unhelpful. Mot. 43. *Griffin* holds no such thing. Rather, it simply concludes that an expert's opinion is not helpful if it is so equivocal as to provide *no* guidance on the likelihood of an event or conclusion. 623 F. Supp. 3d at 1381-82 (opinion that decedent "may (or may not) have survived with earlier medial intervention, does not assist the trier of fact with determining causation."). Mr. Martinez ████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████ Martinez Dep. 264:8-16.

████████████████████: Mr. Martinez opined that, for ████████████ ███████████████████████████████████████████████ ████████████ Martinez 104-05. Defendants argue that this holds Defendants to "a stricter

standard than the ADA requires." Mot. 34-36. But Mr. Martinez did not opine on the standard for liability: rather, he explained, based on his experience, what standard he believes is necessary, and the consequences of failing to meet it. Martinez 105-107. As the resident legal expert, the Court will reach its own conclusions about the applicable standard and, as factfinder, can weigh Mr. Martinez's testimony accordingly. *See Braggs*, 317 F.R.D. at 650; *supra* p. 4, 13-15. Defendants provide no reason why Mr. Martinez's opinions should be excluded under *Daubert*.

███████████████ With respect to ████████████████ Defendants argue that Mr. Martinez ████████████████████████ not mandated by the ADA, and that his report "nitpicked" certain matters. Mot. 36-37. The opinions that Defendants describe as "nitpick[y]" include matters central to this case, including ████████████████████████████

████████████████████. *See id.* Mr. Martinez's conclusions described how ██████████

████████████████████████████████████████████████████████████████████

████████████. *See* Martinez 24-61, 173-208. This is precisely what experts do. Further, even if Mr. Martinez had ████████████████████████████████████████████████████████

████████████ *See Noe v. Metro. Gen. Ins. Co.*, 2012 WL 7760143, at *3 (N.D. Ga. Dec. 10, 2012) (finding expert opinion on "[i]ndustry best practices" sufficiently reliable and that any "perceived flaws" with the expert's methodology "can be pointed out by Defendant during cross-examination."); *Williams v. First Advantage LNS Screening Sols. Inc.,* 2015 WL 9690018, at *3 (N.D. Fla. Mar. 31, 2015) (finding testimony about "what industry standards were and why Defendant's procedures failed to meet them" which arise out of "extensive experience" helpful).

Defendants' assertion that, with respect to ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████ To the extent

Defendants believe that Mr. Martinez should have considered more or different ████████

████████████████ those arguments go to weight, not admissibility. *See supra* p. 2-4.

### III.  Mr. Mark Larson's Opinions Are Admissible.

Mr. Mark Larson offered expert opinions based on his experience ████████████

████████████████████████████████████████████████████████████

█████[15] Mr. Larson opined that ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████. *See, e.g.*, Joint Rpt. 25-

50, 54-60, 71-77. Mr. Larson's opinions are grounded in his decades of experience in fire and life

safety ████████████████████████████████████████████████

████████████████████████████████████████

Defendants narrowly (and incorrectly) construe Mr. Larson's report to be ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ *See, e.g.*, Joint Rpt. 25-50. Because

Mr. Larson's opinions are reliable and helpful, they should not be excluded.

---

[15] March 10, 2023 Joint Expert Report of Mr. Mark Larson and Richard Ray ("Joint Rpt.," attached as Exhibit 6); *see also* August 28, 2023 Rebuttal Expert Report of Mr. Mark Larson ("Larson Rebuttal," attached as Exhibit 7).

**A.  Mr. Larson Is Qualified.**

Defendants do not challenge Mr. Larson's qualifications. He has worked for more than 45 years in the fire and life safety field. *Id*. 3-6. He served for over 14 years as the Idaho State Fire Marshal, which included conducting inspections of Idaho DOC facilities, enforcing the Fire Code and all related standards applicable to those facilities, and working with Idaho DOC management and legislative leaders to resolve life safety issues in those facilities. *Id.* Mr. Larson also serves as a consultant for the National Disability Rights Network ("NDRN") and represents the NDRN on National Fire Protection Association technical committees relating to Detention and Correctional Occupancies. *Id.*

**B.  Mr. Larson's Opinions Are Reliable and Have an Adequate Factual Basis.**

Mr. Larson's opinions are reliable and are based on ███████████████████████ ███████████████████████ Defendants' claims that Mr. Larson's opinions are not specific enough, or that they he should have considered other sources of evidence, are unavailing.

███████████: Mr. Larson opined that GDC's failure to ███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *Id*. 37. Defendants argue that this opinion is "imprecise and unspecific," Mot. 21, but Mr. Larson's opinion identified ████████████████████████████████████████████████ ███████████████████████████████████, Joint Rpt. 25-50. Mr. Larson explained that, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

25



*Id*. Mr. Larson explained the factual basis and reasoning of his conclusion, applying his extensive expertise to ███████████████████████ *Id*. 25-36.

**Suggestions of other sources of information:** Defendants criticize Mr. Larson for not providing ████████████████████████████ and misconstrue Mr. Larson's opinion ████████████████████████████ which, they say, "undermines his conclusion that ████████████████████████████ ██████████████████████ Mot. 21-22. Defendants, however, overlook the full basis of this opinion, which extends far beyond the ██████████ ████████████████████████████ . Joint Rpt. 25-50. The existence of a single example in which ████████████████████████████ . If Defendants wish to argue otherwise, they may do so, but their claim does not go to admissibility. *See supra* p. 2-4.

The single case Defendants cite in support of their claim that Mr. Larson's opinion lacks a sufficient factual basis, *Cook v. Sheriff of Monroe Cnty., Fla.,* 402 F.3d 1092 (11th Cir. 2005), does not help them. In *Cook*, the court affirmed the exclusion of a proffered suicide expert's testimony, which concerned matters that "arguably l[ay] within the understanding of the average lay person," was "unsubstantiated by *any* factual basis," and was "lacking in *any* factual foundation." 402 F.3d at 1108-13 (emphasis added). By contrast, for each of his opinions, Mr. Larson provided a robust factual foundation and applied generally accepted standards of practice informed by his decades of experience in fire and life safety. Defendants' challenges to

26

the evidence Mr. Larson should or could have considered are not comparable to the opinions in *Cook*, which were based on *no* factual basis.

**C.   Mr. Larson's Opinions Are Helpful.**

Mr. Larson's testimony will assist the Court. Plaintiffs contend that GDC violates the ADA and Section 504 by failing to include and provide equal access to deaf and hard of hearing people in emergency planning and preparedness. Mr. Larson's testimony, which detailed ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ will be relevant to determining GDC's liability and formulating appropriate remedies.

Defendants attempt to dictate what types of opinions Mr. Larson *should* offer, and then argue that he does not offer those opinions. Mot. 19-21. That is not Defendants' role. Contrary to their contention that Mr. Larson's testimony is unhelpful because ██████████████████

██████████████████████████████ *id.*, his opinions are relevant to and advance material aspects of Plaintiffs' case, including ████████████████████████████

████████████████████████████. *See, e.g.*, *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2009 WL 856306, at *5-6 (N.D. Ga. Feb. 9, 2009) (expert testimony that is "an important piece of the puzzle that the plaintiffs endeavor[ed] to assemble" is admissible even if not "sufficient in and of itself" to prove the case) (quotations omitted); *see also supra* p. 2-4.

Mr. Larson offered testimony about material aspects of Plaintiffs' case, including: ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████. *See, e.g.*, Joint Rpt. 15-23; Larson Rebuttal 3-19. Mr. Larson need not opine on every aspect of liability necessary to show a violation of the ADA—██████████████████. That does not undermine the helpfulness of his opinions. *See supra* p. 2-4.

Moreover, Defendants misrepresent Mr. Larson's testimony. He did not "confirm[]" ████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████ Mot. 21. In the transcript excerpt Defendants rely on, Mr. Larson testified that his opinions covered more ground than that:



Indeed, Mr. Larson spent considerable space in his report and time during his deposition describing

██████████████████████████████████████████████████████

█████████████████. Joint Rpt. 25-50; Larson Dep. 228:19-251:25. Thus, Mr. Larson's opinions and testimony—the bulk of which are unchallenged in a meaningful manner by Defendants—logically advance material aspects of Plaintiffs' case and are admissible.

## IV.  Mr. Roger Williams' Opinions Are Admissible.

Mr. Roger Williams offered opinions based on his expertise in ████████████

██████████████████████████████████████████████████████

█████████████.[17] After a review of extensive evidence, Mr. Williams offered opinions, including

---

[16] May 23, 2023 Expert Deposition of Mark Larson at 224:19-225:3 (objection omitted) ("Larson Dep." excerpt attached as Exhibit 8).

[17] Williams; August 7, 2023 Rebuttal Expert Report of Mr. Roger Williams ("Williams Rebuttal," attached as Exhibit 10).

that: 

. Williams 22-70. Mr. Williams also offered expertise and opinions on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* 9-14. He discussed ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮. *Id.* 14-17. He offered expertise on ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* 20-22, 57-60. This is helpful to the Court in understanding the context of ▮▮▮▮▮▮ ▮▮▮▮ and the impact of Defendants' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. While nominally seeking to exclude all of Mr. Williams' opinions, Mot. 41, Defendants make no arguments that his opinions on ▮▮▮▮▮▮▮▮▮▮, are inadmissible. Defendants' challenges on these matters are too imprecise to warrant exclusion. *See supra* p. 2.

   A.   **Mr. Williams is Qualified.**

   Defendants do not challenge Mr. Williams' qualifications. He has worked in the field of deaf mental health since 1979, treating over 500 deaf patients and overseeing mental health services to deaf and hard of hearing populations. Williams 4-6. He developed a Communication Skills Assessment ("CSA") which he has used to evaluate over 150 people. *Id.* 5. He has testified as an expert in multiple cases involving the communication assessment or mental healthcare of deaf and hard of hearing people, and he was jointly selected and appointed by the Northern District of Georgia as an independent monitor of Georgia's public mental health services for deaf people.

*Id*. 4-7; *Belton v. Georgia*, 2013 WL 593805, at *1 (N.D. Ga. Feb. 15, 2013); *see also Mullen v.*

*S. Denver Rehab., LLC*, 2020 WL 6680358, at *4-6 (D. Colo. Nov. 12, 2020) (denying motion to

exclude Mr. Williams' testimony).

**B.    Mr. Williams' Opinions Are Reliable and Have an Adequate Factual Basis.**

Mr. Williams' opinions are reliable and are based on a sufficient factual basis. Defendants

contend that Mr. Williams based his opinions ████████████████████████████████████.

Mot. 42.[18] Defendants are wrong. In addition to ██████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████  ████  ███████  ███████  ██████  ██████  ██████  ███████  ██████

███████████████████████████████████████████████████████████████████

████████████████████ *See, e.g.*, Williams 8-9, 28-70; Williams Rebuttal 10, 14-15, 21-25.

Mr. Williams relied on the same methods that he typically uses in his professional work and as a

monitor of Georgia's mental health systems. Williams 7. █████████████ Mr. Williams also

mirrored his clinical methods, *id*. 25, further supporting reliability, *supra* p. 6.

As Mr. Williams explained in his deposition, ███████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████

         █████████████████████████████████████████████

         █████████████████████████████████████████████

         █████████████████████████████████████████████

         █████████████████████████████████████████████

         █████████████████████████████████████████████

         █████████████████████████████████████████████

         █████████████████████████████████████████████

---

[18] Defendants' discussion of ████████████████, Mot. 41-42, although included under the heading of "Williams'
Opinions Lack a Sufficient Factual Basis," are in fact challenges to the helpfulness and legal standards in
Mr. Williams' opinions and are discussed below under helpfulness. *See infra* p. 32.

the forms, the procedures, the policies across the entire system.[19]

Mr. Williams' ████████████████████████████████████████████████

████████████████████████████████████████████████████, are reliable and

routinely used in class actions in similar contexts. *See supra* p. 6-7*.* Defendants' arguments that

Mr. Williams should have considered a different ██████████ or different ██████████, do not

undermine admissibility. *See supra* p. 2-4.

Defendants also argue that Mr. Williams' opinion that ███████████████████

███████████████████████████████████████████████████████ was

speculative. Mot. 43. But Mr. Williams explained that ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

████████████ Williams 59-60. Mr. Williams conducted ██████████████

████████████████████████████████████████████████████

████████████████. *Id*. 60-72. Thus, Mr. Williams' opinions rest on a solid factual

foundation. Defendants contend that Mr. Williams should have ████████████████

████████████████████████████████████████████████████

████████████ Mot. 43. This is simply an argument that Mr. Williams should have used

a different methodology, which goes to weight, not admissibility. *See supra* p. 2-4.

Defendants' complaint about ██████████████████████ in his opinion

████████████████████████████████████████████████████

---

[19] May 18, 2023 Expert Deposition of Roger Williams at 268:22-269:16 ("Williams Dep." excerpt attached as Exhibit 11).

not grounds for exclusion. Mot. 43. Unlike the completely ambiguous statement in *Griffin*, *supra*

p. 22*,* Mr. Williams ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████. Williams 65.

### C.    Mr. Williams' Opinions Are Helpful.

Mr. Williams' testimony is helpful. Plaintiffs allege that widespread problems in GDC's

processes providing effective communication and accommodations to deaf and hard of hearing

people violate the ADA, Section 504, and the Constitution. Mr. Williams' testimony, detailing

████████████████████████████████████████████████████████████████████

████████████████████████████, is relevant to determining GDC's liability and formulating

appropriate remedies. Defendants' contentions that Mr. Williams should have applied certain

"legal standards," or opined on other elements of Plaintiffs' claim, do not make his testimony

unhelpful. *See supra* p. 2-4.

Defendants seek to dismiss Mr. Williams' system-wide conclusions by claiming that he

"fails to sufficiently tie [the deficiencies] to actual ADA violations." Mot. 42. For the same reasons

these arguments fail to undermine the opinions of Dr. Venters and Mr. Martinez, they fail here.

*See supra* p. 2-4, 12-15, 20-24. Mr. Williams did not reach legal conclusions. He did not opine on

whether the ADA requires GDC to ████████████████████████████████████████

████████████████████████████████████. Instead, he offered opinions and testimony about

████████████████████████████████████████████████████████████████████

██████, Williams 20-22, and observed that GDC's methods diverge ██████████████████,

*id*. 26-50. He opined that ██████████████████████████████. *Id.* 56-72. Mr. Williams'

opinions are clearly helpful to the Court in deciding this case, and are not rendered inadmissible

by Defendants' disagreement with them. Mot. 41-50; *see supra* p. 2-4, 13-15.

Defendants assert that the ADA does not require GDC to ███████████ and argue that Mr. Williams' consideration of ███████████ was therefore incorrect. Mot. 46-47. But because Mr. Williams did not purport to address ███████████████, Defendants' challenges to these nonexistent opinions are irrelevant. *See supra* p. 13. Mr. Williams considered █████████ as one source of information, among many, that was relevant in reaching his conclusions. Williams 50-56. This is permissible and typical i███████████████ even if his consideration ██████ was problematic, would not justify exclusion of his opinion. *See supra* p. 2-4, 6-7.

Defendants impute to Mr. Williams a legal theory that GDC must █████████████ ████████████ and then argue why this theory is wrong. Mot. 44. Nowhere did Mr. Williams state or advocate for ████████ Defendants' challenges are irrelevant. *See supra* p. 13. Mr. Williams ████████████████████████████████████████████ █████████████████████████████████████████████████████ █████████████████████████████████████████████████████ █████████████████████████. Williams 20-22, 56-60. He did not offer opinions on whether ████████ are required by law, or whether GDC is violating any law by █████████. Rather, he opined that GDC███████████████████████████, than in systems he has overseen. *Id.* 26-37, 42-43. He opined that GDC's approach is likely to ████████ ██████████████████████████ *Id.* 21, 60-61. He did not purport to analyze regulations or affirmative defenses that Defendants may raise. Defendants may raise defenses and make arguments as to the strength of Mr. Williams' opinions, or whether his opinions show a violation of the ADA. But such arguments do not point to inadmissibility. *See supra* p. 2-4.

Relying on his expertise, Mr. Williams opined that ███████████████████████ ███████████. Williams 18, 25. Defendants put forth a legal analysis of whether and when, in their

view, Deaf Interpreters are required, and defenses they may raise to justify their refusal to provide

Deaf Interpreters, and then fault Mr. Williams for not considering its analysis or defenses. Mot.

44-46. Mr. Williams, however, had no reason to consider these in his report. Although Defendants

may raise these arguments, they are unrelated to admissibility and *Daubert* standards. Defendants'

challenge of Mr. Williams' ██████████████████████████████

also go to weight and not admissibility. *See supra* p. 2-4.

> **D.    Mr. Williams'** ████████████████████████ **Is Reliable.**

Mr. Williams opined that ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ *Id*. 14. Defendants

do not challenge these opinions.

Mr. Williams then discussed ████████████████████████████

████████████████████████████.[20] *Id.* 22-25.

████████████████ ██████████████ ████████████████

██████████.[23] *See Mullen,* 2020 WL 6680358, at \*5. ████████

---

[20] Mr. Williams' opinions regarding ████████████████, *see, e.g.*, Williams 26-56, Williams Rebuttal 19-24, do not rely on ████████████████████████████ Williams 5.
[21] *See* Williams 5; Roger C. Williams & Charlene J. Crump, *Communication Skills Assessment for Individuals who are Deaf in Mental Health Settings*, *in* LANGUAGE DEPRIVATION AND DEAF MENTAL HEALTH 136-158 (Neil S. Glickman & Wyatte C. Hall eds., 1st ed. 2019).
[22] Williams 19 n.23 (citing Kent R. Schafer, Evaluating Psychometric Properties of an Existing Functional Communication Assessment for Deaf Individuals (2021) (Ph.D. dissertation, University of Alabama), http://ir.ua.edu/handle/123456789/8166 ("Shafer" attached as Exhibit 12)).
[23] Georgia Commission for the Deaf or Hard of Hearing, Meeting Minutes (Oct. 8, 2020), https://dhs.georgia.gov/document/document/gcdhh-quarterly-meeting-minutes-10-08-20-finalpdf (last visited Nov. 15, 2023) at 2.

██████████████ ████████████████████████████████

████████████████████████████████████████████████

Williams 18-19. He noted that ████████████████████████████████

██████████████████ *Id.* 19-20. Mr. Williams ████████████████

█████████████████████████████████. *Id.* 25, Exs. C-

F. Defendants' expert agreed ██████████████████████████████.

*See* Williams Rebuttal 26.

Defendants challenge ████████ as "homecooked" ████████████. Mot. 41, 47-50. This is

incorrect. The CSA is consistent with "the practice of an expert in the relevant field." *Frazier*, 387

F.3d at 1260. It is widely used by the relevant community ██████████████ in "over a dozen

states," including Alabama and South Carolina. Williams 5; Shafer ii. As part of the consent order

in *Belton v. Georgia*, for which Mr. Williams is the court-appointed monitor, the Director of the

Office of Deaf Services at the Georgia Department of Behavioral Health and Developmental

Disabilities ("DBHDD"), explained that his staff uses ████████ "to go around the state, and do

communication assessments, and is utilizing the one standardized tool for communication in sign

language which is the [CSA] that was established by Alabama, South Carolina."[24] A *Daubert*

challenge ████████ was rejected in ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

is reliable because of its widespread use in the professional community. *See* Williams 5, 19 n.23;

Williams Dep. 207:16-23; 208:15-209:18.

Defendants' claims that ████████ is subjective and cannot be replicated are mistaken. Mot.

---

[24] *Id.*



48. █████████████████████████████████████████████████

████████████████████████████████████.[25] A dissertation analysis ██████████

concluded that the results are objective and replicable, and that different raters will reliably provide

the same score when assessing the same person.[26] Contrary to Defendants' argument that █

███████████████████████████████████████████████████ Mot. 49,

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████." [27] Williams 19.

Defendants attack ████████████████████████, alleging that he failed to

█████████████████████████████████████████. Mot. 48. But Mr. Williams clarified

during ██████████████████████████████████████████████████.

Williams Dep. 164:23-165:19. He also explained █████████████████████████████

███████████████████████████████████████." *Id*. 168:23-

169:4; *see also* Manual 3 (emphasis added). At bottom, ██████████ is an accepted assessment,

---

[25] Roger Williams & Charlene Crump, Communication Skills Assessment: Directions for administration and scoring, (Roger Williams et al. eds., 2.2 2d. 2019)
https://nebula.wsimg.com/7491cb0669998401d3313125eaf6c4d3?AccessKeyId=3A4D281FC342201F337B&disposition=0&alloworigin=1 ("Manual") attached as Exhibit 13, at 29-48.

[26] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████ Ex. A at 5; Schafer.

[27] Defendants make passing reference to ████████████████████████████
█████████████████████████ This factor sheds no light on the admissibility
*See Frazier*, 387 F.3d at 1262. Likewise, Defendants do not explain why ███████████████████
███████████████████████████ Mot. 49-50. Defendants do not challenge ███████████
███████████████████████████████ *See Face Validity*, Oxford English Dictionary,
https://www.oed.com/dictionary/face-validity_n?tl=true (last visited Nov. 13, 2023); David H. Kaye & David A. Freedman, *Reference Guide on Statistics*, *in* Reference Manual on Scientific Evidence 211, 285 (3d ed. 2011).

including in Georgia, as evidenced by peer and court acceptance. *See Mullen*, 2020 WL 6680358, at \*5. Defendants' attacks on ████████████████████████, Mot. 48-49, are, at best, issues for cross-examination and do not require exclusion. *See supra* p. 2-4.

## V.     Mr. Richard Ray's Opinions Are Admissible.

Mr. Richard Ray offered opinions based on his expertise in deaf and hard of hearing accommodations, technology, policies, and auxiliary aids necessary to provide deaf and hard of hearing incarcerated people with the means to effectively communicate and to access prison programs, services, announcements, and activities.[28] Mr. Ray also offered opinions relating ████ ████████████████████████████████████████. Joint Rpt. 51-58, 60-77. Defendants' attempts to exclude Mr. Ray's opinions as unreliable and unhelpful should be rejected.[29]

### A.     Mr. Ray Is Qualified.

Mr. Ray's opinions are grounded in his extensive experience with ensuring governmental entities provide necessary auxiliary aids and services and equal access to deaf and hard of hearing populations. His qualifications—which Defendants do not contest—include working on ADA compliance in a variety of roles for the City of Los Angeles Department on Disability and its preceding office from 1992 until 2021. Ray 2-4. In these roles, he advised the city of Los Angeles—including its detention centers and law enforcement agencies—on accessibility and compliance with the ADA and Section 504. *Id.* 2-3. His work also included maintaining systems to provide reasonable accommodations, technology, devices, auxiliary aids and services, and consultation on ADA policies. *Id.* 2-4. Mr. Ray has served as an expert in more than 20 cases

---

[28] March 10, 2023 Expert Report of Mr. Richard Ray at 5 ("Ray," attached as Exhibit 14); August 7, 2023 Rebuttal Expert Report of Mr. Richard Ray ("Ray Rebuttal," attached as Exhibit 15).
[29] While Defendants challenge all 34 of Mr. Ray's opinions for "insufficient factual basis," Mot. 6, their brief does not describe in any detail their objections to ████████████████████████████████████████ ████████████████████████. Accordingly, these arguments are waived. *See supra* p. 2. In any event, they are supported by extensive record evidence, detailed in Mr. Ray's report.

involving access and auxiliary aids for deaf and hard of hearing people—most of those focused on prisons and jails. *Id.* 11, Ex. A. Mr. Ray also based his opinions on his knowledge and understanding of deaf and hard of hearing people and auxiliary aids and services, derived from his "firsthand lived experience as a deaf person." *Id.* 4.

**B.    Mr. Ray's Opinions Are Reliable and Have an Adequate Factual Basis.**

Mr. Ray's opinions are reliable and rest on a sufficient factual basis. In forming his opinions, Mr. Ray considered, among other things:



. *Id.* Ex. B; Joint Rpt., Appx. D. Mr. Ray ████████████████████ to his expertise on technology and systems that are widely available, and that are necessary for effective communication with deaf and hard of hearing people. *See Bullock v. Volkswagen Grp. of Am., Inc.*, 107 F. Supp. 3d 1305, 1308 (M.D. Ga. 2015) (admitting testimony of expert with over 40 years of direct expertise who "bases his opinion primarily on personal experience" and "confirms the wisdom . . . that old-fashioned first-hand experience can be a powerful thing.").

Defendants argue that the Court should exclude all of Mr. Ray's opinions because Mr. Ray in his deposition made what they call a "concession," which, they argue, meant that he did not connect his knowledge to the facts of the case. Mot. 6. Mr. Ray made no such concession. In the portion of the deposition upon which Defendants rely, Mr. Ray testified that ████████████

████████████ ██ ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████ Defendants fail to explain why they believe this simple statement means that Mr. Ray did not apply his knowledge to the facts of the case, nor could they. Mr. Ray's reports ████████████ ███████████████████████████████████████████████, and he applied his expertise and experience in analyzing this information. *See*, *e.g.*, Ray 16-19, 23-24, 28, 34-36; Joint Rpt. 52-54, 56-58, 64-76; Ray Rebuttal 2-4, 6-7, 11, 13.

As discussed below, with respect to nearly all of Mr. Ray's opinions, Defendants contend that he did not ███████████████████████████████████████. These challenges misrepresent Mr. Ray's opinions, the extensive factual basis and expertise supporting them, and the nature of an expert's role in a class action. Mr. Ray reached opinions based not only on ██████████████████████████, but also on ██████████████████████ ████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████. *See, e.g.*, Joint Rpt. 64-71; Ray 16-25, 27-28, 34-36, 39-48, 50-55, 59-66, 70-75; Ray Rebuttal 13-14. Arguments that Mr. Ray should have █████████████████████████ go to weight, not admissibility. *See supra* p. 2-4.

████████████████████: Mr. Ray considered ██████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████. Ray 11-31. He relied on his expertise in offering opinions on ██████████ ████████████████████████████████████████████████████████████████████

---

[30] July 25-26, 2023 Expert Deposition of Richard Ray, at Vol. II 290:9-15 ("Ray Dep." excerpts attached as Exhibit 16.)

████████████████████████████. *Id*. He relied on his expertise to ██████

████████████████████████████████████████████████████

████████████████████████. *Id*. He concluded that ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████. *Id*. 16-22, 23-25, 27-28, 31. Mr. Ray's fulsome analysis

provided a clear factual foundation and is typical and appropriate for an expert opining in a class

action like this one. *See supra* p. 6-7.

With respect to ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████. *Id*. 16-21.

Defendants disregard this foundation, and argue that because, at his deposition (more than five

months after fact discovery closed), Mr. Ray ████████████████████████

████████████████████████████████████. Mot. 7. There is no way

Mr. Ray could have had that information at the time he was deposed; thus Defendants' contention

does not undermine the factual foundation that forms the basis for his opinions.

Defendants argue that Mr. Ray's observation that ████████████████████

████████████████████████████████████████████. *Id*. 25. This neglects the

scale and scope of the problems Mr. Ray identified in reaching his conclusions. Mr. Ray's opinion

is not that *no one* in GDC has *ever* ███████████████, nor would such a conclusion be

necessary for Plaintiffs' case. To the contrary, Mr. Ray noted ███████████████,

but highlighted the persistent, system-wide problems GDC continues to experience in ██████

████████████████████████████████████████████████████████

████████████████████. Ray 16-21.

   With respect to ███████████, Defendants complain that Mr. Ray ███████████

████████████████ Mot. 8. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ Ray 23-24. Mr. Ray's review of evidence showed that ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ *Id.* If Defendants believe that ███████████

███████████ would strengthen his opinions, that goes to weight, not admissibility. *See supra* p. 2-4.

   The   same   sound   factual   basis   underlies   Mr. Ray's   other   opinions   about

████████████████████. Ray 27-28, 31. In forming each of these opinions, Mr. Ray

analyzed information about ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████.[31] *Id.* 31. ████████████████████

████████████████████████████████ *Id.*

---

[31]Defendants' claim that ████████████████████ Mot. 8, is incorrect. ████████

████████████████████████████████████████████ Ray 28.

Mr. Ray's opinions are not undermined ███████████████████████████████

████████ Mot. 8. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████. Such descriptors to describe probability are permissible.

*Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1368 (M.D. Ga. 2007). ████████████

█████████████████ the hypothetical language provided by the expert in *Clarke v. Schofield*, who was

offering an opinion on a matter which he had never opined on previously and which the court

determined was too uncertain. 632 F. Supp. 2d 1350, 1358-59 (M.D. Ga. 2009). Unlike the use of

noncommittal language in *Griffin* that failed to provide any information on the likelihood of a

certain conclusion, █████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

Mot. 15; Ray 28 (emphasis added).

████████████████████████: Mr. Ray opined on █████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████. Ray 31-49. In reaching his opinions, Mr. Ray █████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████. *Id.* 35, 39-40, 40-42, 43. Based on this review of evidence

and his decades of expertise, Mr. Ray summarized ████████████████████████

███████████████████████████████████████████████ *Id.*

35. Defendants incorrectly assert that this statement is ████████████████████

█████████████████████████████, Mot. 9-10, disregarding ████████████

███████████████████████████████████. *See* Ray 35, 39-40, 40-42,

43. These opinions have a sufficient factual basis and should not be excluded.[32]

    Mr. Ray's opinions about █████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████. Ray 46-48. Mr. Ray

based his conclusion ████████████████████████████████████████

███████████████████████████. *Id.* 48.[33] Applying his expertise in the provision of

auxiliary aids and services to deaf and hard of hearing people, Mr. Ray ████████████

████████████████████████████████████████████████

███████████████████████████. Defendants fail to address the sources of information

---

[32] Defendants also claim that Mr. Ray relied on ████████████████████████████
███████████████████████████████████████ Mot. 11. Both are untrue.
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████ Ray 44-45.
[33] For the reasons based on the cases cited in Plaintiffs' Partial Summary Judgment Brief, Defendants' affirmative
obligation exists even in absence of specific requests. Dkt. 182-1 at 4-6, *supra* p. 14-15.

Mr. Ray's opinion relied on, much less explain why he should not rely on these sources in forming opinions about ███████████████████████. Mot. 11. These arguments go to weight and do not support exclusion. *See supra* p. 2-4.

With respect to ████████ Mr. Ray opined that ████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████ Ray 50-52. Defendants do not challenge this observation, but criticize Mr. Ray for ████████████████████████████████████. Mot. 12. This argument misunderstands that "[l]ack of meaningful access is itself the harm under Title II, regardless of whether additional injury follows." *Luke v. Texas*, 46 F.4th 301, 306 (5th Cir. 2022) (emphasis omitted). Further, these arguments do not respond to the opinions Mr. Ray actually reached. If Defendants wish to argue that ████████████████████████████████ ████████████████████████████, they may do so at trial. But such arguments do not undermine Mr. Ray's expertise and observations, ██████████████████████ ████████████████████████████████████.[34]

████████████████████████: Mr. Ray opined ██████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████. Ray 55-60. To form his opinion, Mr. Ray relied on: ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████. *Id.* 55-60. ████████████████████ comprise a strong

---

[34] Defendants' arguments about the "fact-intensive" nature of ADA and Section 504 claims are included in their section about "insufficient factual basis." Mot. 10-11. Because these are actually arguments about helpfulness and legal standards, they are discussed below. *See infra* p. 48-49.

factual basis. Defendants' argument that Mr. Ray's opinion should be excluded ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Mot. 12, is incorrect, *see supra* p. 2-4.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬: Mr. Ray opined that GDC ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬. Ray 61-67. Defendants argue that Mr. Ray did not conduct the legal analysis to demonstrate what legal protections are implicated by this failure. Mot. 12-13. But Mr. Ray did not reach legal conclusions, nor should he. *See supra* p. 4. He opined that ▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Ray 61-62. He opined that ▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬. *Id.* 62. Defendants are free to argue that ▬▬▬▬▬▬▬ is legally permissible, but Mr. Ray's opinions nonetheless remain admissible because they are directly relevant to the issues in this case and are helpful to the trier of fact.

Defendants complain that Mr. Ray ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Mot. 13. This complaint goes to weight, not admissibility. *See supra* p. 2-4, 39. Mr. Ray's opinion discussed ▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ray 61-62. He identified and discussed ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬. *Id.* n.283. He also ▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *Id.* 65. Defendants do not explain why Mr. Ray could not reasonably rely on these sources in forming his opinions about ▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬ Moreover, they disregard ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* 61-67. Defendants' arguments do not support exclusion or undercut the factual basis for Mr. Ray's opinions. *See supra* p. 2-4.

████████ Mr. Ray opined that █████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████ Ray 73-74. Defendants claim that ███████████

██████████████████████████████ he "failed to sufficiently tie [his opinions]

to any facts." Mot. 14. However, Mr. Ray's opinions are based on ████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████ *See* Ray Rebuttal 31.

**Joint Report:** In his Joint Report with Mr. Larson, Mr. Ray offered opinions about ████████

███████████████████████████████████████████████████████

████████████████████████. Joint Rpt. 1. Mr. Ray's opinions in the Joint Report are based

on a ██████████████████████████████████████████████████████

████████████████████████. *Id.* 25-77; Ray Rebuttal 4.

Defendants' claim that Mr. Ray did not █████████████████████████████

██████████████████████████. Mot. 14-15. In fact, Mr. Ray noted █████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████ Joint Rpt. 57; Ray Rebuttal 4. These instances ███████████████

████████████████████████████████ are injuries under the ADA. *See Luke*, 46 F.4th at 306. Further, Defendants' contentions that several of Mr. Ray's opinions in the Joint Report lack a "sufficient factual basis" ████████████████████████████████ ███████████████████████████ Mot. 14.[35]

With respect to Mr. Ray's opinions on ████████ Defendants argue that failure to establish a training program is not an independent violation of the ADA. *Id.* 14. This misunderstands Mr. Ray's testimony. Mr. Ray did not opine on the ultimate legal issues. Rather, he opined on

████████████████████████████████████████████████████

████████████████████████████████████████████ Joint Rpt. 51-58. Unlike in *Haberle*, which Defendants rely upon, Plaintiffs ████████████ ████████████████████—that there is ample evidence that GDC's actions harm class members. But whether that conduct violates the law is a matter for the trier of fact to decide.[36] *See supra* p. 2-4, 15. For these reasons, all of Mr. Ray's opinions are reliable and rest on a sufficient factual foundation.

**C.    Mr. Ray's Opinions Are Helpful.**

Mr. Ray's opinions are helpful. Contrary to Defendants' contention that Mr. Ray's opinions should be excluded because they supposedly "rest on" incorrect legal standards, Mot. 15-19, Mr. Ray did not rely on or apply any legal standards in his opinions.

Defendants first claim that Mr. Ray based his opinions on a belief that ████████████ ████████████████████████████████ *Id.* 16. Mr. Ray made no such assertions and identified no such standard. Rather, Mr. Ray ████████████████████████,

---

[35] Defendants do not challenge Mr. Ray's joint opinion that ████████████████████████ ████████████████████████████████ " Joint Rpt. 58-76. Challenges to this opinions are waived. *See supra* p. 2.

[36] Furthermore, Defendants misconstrue *Haberle*. *See supra* p. 18 n.12.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████. Ray 1-2, 5-6, Ex. B. Based on his expertise, Mr. Ray

documented █████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████. *See, e.g.*, *id.* 1. His report explained clearly how he reached each conclusion. *See,*

*e.g.*, *id.* 53-55, 67-72; Joint Rpt. 51-54.

Defendants' other attempts to shoehorn Mr. Ray's opinions into legal conclusions are

unavailing. Defendants claim—with no citation or support in Mr. Ray's reports—that he did not

account for ███████████████████████████████████████████

█████████████████████████. Mot. 17. But Mr. Ray did not determine when

███████████████████████████████ *Id.* Rather, he opined on ████████████████

████████████████████████████████ *See*, *e.g.*, Joint Rpt. 71-76; Ray 34-36;

Ray Rebuttal 12-14. ████████████████████████████████████████

████████████████████████[37]

In his deposition, ████████████████████████████████████████

████████████████████████████████████. Ray Dep. Vol. I 32:4-9.

Mr. Ray's response, ███████████████████████████████████████

███████████████████████████████████████████████

---

[37] Defendants rely on *Boca* to argue that Mr. Ray's opinions "remain unhelpful to the trier of fact because they rely, at least in part, on GDC's lawful conduct to support the broad conclusion that GDC violated the law." Mot. 18. *Boca*, however, does not support the proposition that if Defendants acted lawfully in some cases, an expert is precluded from opining that systemic failures exist.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. It is unrelated to his opinions as outlined in his reports and does not render them unhelpful. *See supra* p. 13.

Defendants' challenges to Mr. Ray's opinions ▓▓▓▓▓▓▓▓▓▓▓▓▓ based on the "fact-intensive" nature of ADA and Section 504 claims are irrelevant. Mot. 10. Defendants offer no support for their claim that the "fact-intensive" nature of a legal claim limits or excludes expert testimony on that matter. *See supra* p. 9-10. Mr. Ray offered opinions about ▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓ Ray 34-36, 39-48. Defendants' arguments that ▓▓▓▓▓▓▓▓▓▓ do not violate the ADA or Section 504 do not go to admissibility. *See supra* p. 2-4.

Defendants also claim that Mr. Ray applied an incorrect legal standard by opining that ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Mot. 17-18. Again, Mr. Ray did not rely on this, or any, *legal* standard. He opined that, ▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓ Ray 24-25, 35-36, 45-46. Mr. Ray did not opine on the law, but simply on what, based on his expertise, will happen as a result of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Defendants are free to argue that this conduct is lawful, but Defendants' theory of the case does not render Mr. Ray's opinions irrelevant or unhelpful.[38]

---

[38] As discussed extensively in Plaintiffs' Motion for Partial Summary Judgment, Defendants' theory that they have no affirmative obligation is misplaced, and the cases cited in their *Daubert* motion do not support this theory. *See supra* p. 14-15.

Lastly, Defendants contend that Mr. Ray "applied a more exacting standard to GDC than the standard his former long-time employer, the City of Los Angeles, applies when implementing the ADA." Mot. 18. This argument misstates Mr. Ray's testimony. As he clarified in his deposition, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████, Ray Dep. Vol. II 329:22-331:4, and ████████████████████████████████, *id*. 331:6-10. Moreover, the ADA obligations are not coextensive as applied to city and a prison system, nor did Mr. Ray purport to provide direct comparisons between the systems in use in Los Angeles and what he observed, or believed was necessary, in GDC and GBOP.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' motion to exclude be denied in its entirety.

Respectfully submitted this 20th day of November 2023,

William Sutton Ansley, *pro hac vice*
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW
Suite 600
Washington, DC 20036
Phone: (202) 682-7000
Sutton.Ansley@weil.com

Brian Liegel, *pro hac vice*
Leah Saiontz, *pro hac vice*
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Phone: (305) 577-3180
Brian.Liegel@weil.com
Leah.Saiontz@weil.com

Aaron Curtis, *pro hac vice*
Samin Mossavi, *pro hac vice*
767 Fifth Avenue

     /s/ Zoë Brennan-Krohn

Susan Mizner, *pro hac vice*
Zoë Brennan-Krohn, *pro hac vice*
West Resendes, *pro hac vice*
Talila A. Lewis, *pro hac vice*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
DISABILITY RIGHTS PROGRAM
39 Drumm Street
San Francisco, CA 94111
Phone: (415) 343-0781
Fax: (415) 395-0950
SMizner@aclu.org
ZBrennan-Krohn@aclu.org
WResendes@aclu.org
Talila.A.Lewis@gmail.com

Cory Isaacson
Georgia Bar No. 983797
Andrés López-Delgado
Georgia Bar No. 552876

New York NY 10153
Phone (212) 310-8000
Aaron.Curtis@weil.com
Samin.Mossavi@weil.com

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF GEORGIA, INC.
P.O. Box 570738
Atlanta, GA 30357
Phone: (678) 981-5295
Fax: (770) 303-0060
CIsaacson@acluga.org
ADelgado@acluga.org

Brittany Shrader, *pro hac vice*
Anna Bitencourt*, pro hac vice*
NATIONAL ASSOCIATION OF THE DEAF
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
TTY: (301) 587-1789
Fax: (301) 587-1791
Brittany.Shrader@nad.org
Anna.Bitencourt@nad.org

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 20, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

<u>/s/ Zoë Brennan-Krohn</u>

Zoë Brennan-Krohn, *pro hac vice*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
DISABILITY RIGHTS PROGRAM
39 Drumm Street
San Francisco, CA 94111
ZBrennan-Krohn@aclu.org